# Document 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
NO. 05-CV-0134

ABIMAEL MANSO-DIAZ,                    :
                                       :
                    Plaintiff,         :        DECLARATION OF
        - v -                          :        DENNIS OLSON, M.D.
                                       :
JAMES SHERMAN,                         :
                                       :
                    Defendant.         :


1. I, Dennis Olson, M.D., do hereby declare that I am the Clinical Director at the Federal Correctional Institution (FCI), McKean County, Bradford, Pennsylvania.

2. The medical records of the inmates who are either incarcerated or released from (and are currently serving a term of supervised release) FCI McKean are maintained in the ordinary course of business at FCI McKean. As the Clinical Director at FCI McKean, I have access to the medical records that are maintained in the ordinary course of business at FCI McKean, including the medical record of former inmate Abimael Manso-Diaz, Reg. No. 09105-055, the Plaintiff in the above-captioned civil action.

3. I have reviewed a inmate Manso-Diaz' prison medical records. The following is a summary of the medical attention he received during his term of federal incarceration which spanned November 13, 2003, through May 11, 2004:

    a.    On December 16, 2003, a Medical Summary of Federal Prisoner/Alien in Transit form was completed by the Immigration and Naturalization Service (INS), Health Services Division, Buffalo, New York. The form indicated inmate Manso-Diaz had the following medical problems: (1) cerebral palsy; (2) scoliosis secondary to cerebral palsy; (3) Gastroesophageal Reflux Disease ("GERD"); (4) chronic asthma; (5) allergies to aspirin; and (6) adjustment disorder. He traveled with the following medications: (1) Baclofen; (2) Zantac; (3) Celebrex; (4) Albuterol; and (5) Triamcinolone. The form indicated he was able to travel by bus, van or car; he was medically able to travel by airplane; he was able to stay overnight at another

facility en route to his destination; there were no medical reasons for restricting the length of time he could be in travel status; and he did not require any medical equipment while in transport status. There was no indication from this form inmate Manso-Diaz needed special mattresses or that he could not be handcuffed behind his back. <u>See</u> Medical Record of Abimael Manso-Diaz, Reg. No. 09105-055, at p. 21, attached hereto.

b.      On December 16, 2003, an intake medical history report was prepared at FCI McKean. It noted inmate Manso-Diaz had a prior medical history of cerebral palsy, asthma, scoliosis, GERD, and adjustment disorder. It was also noted he was taking the following medications: (1) Albuterol, (2) Triamcinolone, (3) Zantac, (4) Baclofen, and (5) Celebrex. It was noted he needed a bottom bunk. <u>See</u>, Attached Medical Records at pp. 20, 31, 33.

c.      On December 17, 2003, an intake medical examination was conducted. He reported he had decreased use of his left lower extremities with noticeable decreased sensation and warmth of the left lower extremities. He reported paralysis of his left upper extremity, cerebral palsy with decreased use of his left lower and upper extremities. He reported over three prior surgeries to the tendons in his feet, with the most recent surgery done in 2002. He noted his back and spine were affected by scoliosis and an accidental fall. He stated he usually used a wheelchair, and he listed to his left side. Tattoos were observed on his right leg, right biceps, right back and he had scars on his left foot. The nurse noted he was a 37 year old male with cerebral palsy, scoliosis, and chronic pain. He stated he took medication for muscle spasms and pain, but did not recall the names of the medications. He stated he was allergic to aspirin (it caused a rash). He indicated pasta caused his lips to swell, and he smoked five cigarettes a day for 20 years. It was recommended he be placed in the general clinic for cerebral palsy and pain. <u>See</u>, attached medical records at pp. 29-30. He was prescribed the following medications: (1) Zantac; (2) Albuterol (inhaler); and (3) Azmacort (inhaler). He was issued an unlimited use wheelchair pass. <u>See</u>, attached medical records at pp. 19, 38. I indicated that I would hold off on prescribing Celebrex. <u>See</u>, attached medical records at p. 19. Inmate Manso-Diaz was assigned to the Chronic Care Clinic (CCC) for regular check-ups. <u>See</u> attached medical records, at p. 30. He was issued a lower bunk pass and was placed on medically unassigned status. <u>See</u>, attached medical records at pp. 30, 33, 37-38.

c.      Later on December 17, 2003, it was noted inmate Manso-Diaz had increased cerumen (ear wax) in his left ear, and no complaints. He was in no acute distress. His right ear canal was clear. He was assessed with cerumen impaction of the left ear. He was given ear wax drops and instructed to clean his left ear each night for five nights. He was instructed to return in five days for a follow-up. <u>See</u>, attached medical records at p. 17.

2

d.    On December 22, 2003, inmate Manso-Diaz returned with complaints of body pains. He indicated he was out of Celebrex and requested muscle relaxers. On observation, it was noted he had no ear wax. He was assessed with cerebral palsy/scoliosis status post cerumen (resolved). He was prescribed Naproxen and issued a six month soft shoe pass. See, attached medical record at pp. 17, 38.

e.    On January 22, 2004, inmate Manso-Diaz was seen in the Chronic Care Clinic (CCC). He reported pain in the back to his hips. He stated he it was hard to walk, and no one wanted to push his wheelchair. He stated he took Baclofen for two months, but it did not help him. After an examination, he was assessed with cerebral palsy, asthma, GERD, and scoliosis. He stated that on a scale of one to ten, with ten being the greatest, his pain level was a 15. Inmate Manso-Diaz was tapered off of Baclofen. His prescriptions for Albuterol, Azmacort, Naproxen and Rantidine were renewed. See, attached medical record, at pp. 15-16.
Also on this date, a medical slip was issued directing inmate Manso-Diaz be given the thickest available mattress. See, attached medical record at p. 39.

f.    On January 26, 2004, inmate Manso-Diaz complained of a spinal problem. He stated that since arriving at FCI McKean, he experienced 30 minutes of paralysis of his lower extremities each morning upon arising from bed. He stated his mattress was too thin. He stated he went to the Warden and the Warden told staff to get him a better mattress. However, staff were unable to get him a better mattress. He was assessed with cerebral palsy and scoliosis. A medical slip was issued directing inmate Manso-Diaz be issued the thickest mattress available. Staff were ordered to check with the Clinical Director and correctional staff regarding the mattress issue. See attached medical record at pp. 13, 39.

g.    That same date, inmate Manso-Diaz returned and complained of strong burning pain, at a level of 10 on a scale of one to ten. He indicated he experienced this pain all day, every day. He stated it felt like his bones were grinding from his back to his lower leg. It was noted he was taking Baclofen (Lioresal) and Naproxen, and the pain was worse when he was upright and walking. He indicated the pain decreased when his legs were down, if he had a soft mattress. It was noted he refused to take Elavil at pill line. The Physician's Assistant (PA) noted the staff physician directed that no other pain medication would be available to him until he was willing to report to pill line to take Elavil. It was noted the mattress issue was forwarded to Inmate Manso-Diaz' unit team for resolution. See, attached medical record at p. 13.

h.    On January 27, 2004, it was noted that inmate Manso-Diaz' Unit Manager issued him two mattresses for his bed, and inmate Manso-Diaz would receive an old style fabric mattress upon request. See, attached medical record at p. 14.

3

I.       On March 11, 2004, inmate Manso-Diaz reported a medical emergency. He indicated he was in pain because he was placed in SHU, where he was placed in handcuffs and forced to sleep on the floor. He complained of pain in his lower back, left neck, and left scapula (shoulder blade). He complained he had no medication, because his Naproxen was confiscated. He also indicated that Naproxen did not help him very much. He wanted his left arm in a flexed position, and reported his pain level increased from five to eight on a scale of one to ten. On observation, he was holding his left arm in a flexed position against his anterior torso. He was in a wheelchair. He felt pain upon palpation of the left trapezius, scapula, and left side of his neck. It was noted his cerebral palsy was obvious. His limbs had atrophied, and he had distorted posture. He was assessed with cerebral palsy with exacerbation of pain and GERD. His arm was placed in a sling. His Case Manager was directed to issue him a double mattress. He was prescribed Naproxen, Zantac, Albuterol, and Azmacort. It was noted these medications were confiscated upon his placement in the SHU and were not returned to him. He was issued a two-week sling pass. See attached medical records, at pp. 14, 39.

j.       On April 1, 2004, he complained of bleeding from his genitals for 17 days. He reported a headache and regional pain at a level of five out of ten. He denied trauma to the area where he was experiencing pain before. He denied knowledge of precipitating factors except for having been given and forced to wear used underwear after he was returned to general population. On examination, one inch erosive lesions were observed on his inner upper thighs bi-laterally with exposure of sub-dermal tissue. A sample of the discharge was taken and forwarded to the laboratory for analysis. He was assessed with skin ulcers, rule out cellulitis. He was prescribed Keflex, Bacitracin ointment, and Betadine. He was instructed on cleaning and re-dressing the affected area. He was educated on treatment, his diagnosis and the medications. See, attached medical records at p. 9.

k.       On April 6, 2004, an administrative notation was entered into inmate Manso-Diaz' records indicating the sample of the discharge material taken on April 1, 2004, tested positive for staphylococcus aureus of moderate growth. It was noted he was using Keflex on the wound area. See, attached medical records at pp. 9, 24.

l.       On April 8, 2004, he indicated the ulcers were better, and he was experiencing itching. He requested a medical note so he could be returned to a two-person cell (he was in a 10-person cell). He stated he was frequently being "bumped" by all the men in his cell. On examination, it was noted his left arm had atrophied with apparent inability to abduct his shoulder over 45 degrees, or to forward abduct his left arm over 45 degrees. It also appeared he could not pronate or supinate his left arm. There was increased pain to palpation of the entire left scapula, acromion,

lateral left clavicle, bicepital groove but no pain in the biceps, and pain at the left trapezius. He had poor to little muscle strength in his left arm and hand. It was also noted he had extreme hyper-reflexes at his left arm, and his right arm had normal reflexes. He claimed a lack of vibration sensation and touch in his left arm. It was noted the erosive lesions observed on April 1, 2004, were healed with some macular scaling. He was assessed with erosive skin lesions of the inner thigh resolved, tinea cruces, cerebral palsy, and scoliosis. He was prescribed Tinactin cream. It was noted that Tinactin was sold at the Commissary; however, the prescription was issued because he represented he was indigent. He was educated on his diagnoses, medical treatment, medications, and hygiene. He was instructed to follow-up as needed at sick call. The PA indicated he would discuss the request for a 2-person cell pass with a medical doctor and would submit a recommendation for a two room pass upon approval by a medical doctor. See, attached medical records at pp. 7-8.

m.  In an administrative notation dated April 8, 2004, the PA indicated inmate Manso-Diaz' request for a medical pass for placement in a two person cell was not approved by health services at that time. See, attached medical records at p. 8.

n.  On April 8, 2004, a notation was entered by the Pharmacist indicating inmate Manso-Diaz was not "indigent" and could be referred to the commissary to purchase over the counter medications such as Tinactin. See, attached medical records at p. 8.

o.  On April 21, 2004, inmate Manso-Diaz was seen in the CCC, where he complained of pain in his left elbow and left side of his back. He complained he could not sleep. He also complained Naproxen did not help him. After an examination, he was assessed with cerebral palsy, asthma, and GERD. He was prescribed Sulindac (also known as Clinoril), Albuterol, Azmacort and Ranitidine. See, attached medical records at pp. 3-4.

p.  On May 10, 2004, an administrative notation was entered indicating inmate Manso-Diaz was to be discharged from the Bureau of Prisons and needed the following medications: (1) Sulindac; (2) Albuterol; (3) Azmacort; and (4) Ranitidine. See, attached medical records at p. 1. This is the last recorded contact inmate Manso-Diaz had with Health Services Staff at FCI McKean.

4.  Attached hereto, please find a true and correct copy of the prison medical records of former inmate Abimel Manso-Diaz, Reg. No. 09105-055, which is maintained in the ordinary course of business at FCI McKean.

5

I declare under penalty of perjury, that he foregoing is true and correct to the best of my knowledge.

Executed this _____ day of May, 2005.

                          _____

                          Dennis Olson, M.D.
Clinical Director
Federal Correctional Institution
McKean, Pennsylvania